[Cite as *State v. Ybarra*, 2012-Ohio-3309.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO. 12-11-13

      v.

BENJAMIN YBARRA,                O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2011 CR 50

Judgment Affirmed

Date of Decision:   July 23, 2012

APPEARANCES:

    *Christopher R. Bucio*  for Appellant

    *Todd C. Schroeder*  for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant Benjamin Ybarra ("Ybarra") appeals the December 6, 2011 judgment of the Putnam County Court of Common Pleas sentencing Ybarra to three years in prison following Ybarra's guilty plea to Child Endangering in violation of R.C. 2919.22(A), a felony of the third degree.

{¶2} The facts relevant to this appeal are as follows. On May 11, 2011, Ms. Cole took her three-year-old daughter, "Jane Doe," to St. Rita's Ambulatory Care Center in Glandorf. Jane Doe was treated for injuries consisting of a fractured skull, a broken right wrist, a fractured right femur, a small tear in her vaginal area, and a bruise along her buttocks. Based upon the injuries, medical personnel from St. Rita's called the police, advising the police that they were treating a child who had potentially been abused. Brian Siefker of the Putnam County Sherriff's Office responded.

{¶3} Officer Siefker learned from medical staff that Jane Doe stated Ybarra had tried to choke her and kick her. Officer Siefker learned from Ms. Cole that Ybarra and Ms. Cole were dating and that they had been living together since March of 2011. After speaking with medical staff, Ms. Cole and Jane Doe, Officer Siefker photographed Jane Doe's injuries. Officer Siefker then went to the residence of Ybarra and Ms. Cole to interview Ybarra. At the residence, Officer Siefker advised Ybarra that Ybarra was a registered sex offender and that he was

still registered under a different address than that of Ms. Cole's where he had purportedly been staying since March. Ybarra was then taken to the Sheriff's Office for an interview.

{¶4} On June 17, 2011, Ybarra was indicted for one count of Child Endangering with allegations of serious physical harm to a child as a result of abuse, in violation of R.C. 2919.22(B), a felony of the second degree, and Failure to Register as a Sex Offender, in violation of R.C. 2950.99, a felony of the fourth degree.

{¶5} On October 28, 2011, pursuant to a written agreement, Ybarra agreed to plead guilty to the amended charge of Child Endangering in violation of R.C. 2919.22(A), a felony of the third degree rather than a felony of the second degree as indicted, and the State agreed to dismiss the remaining charge of Failure to Register as a Sex Offender. In addition, the State agreed to recommend a sentence of community control sanctions.

{¶6} On October 28, 2011, the court held a change-of-plea hearing wherein Ybarra's guilty plea was accepted. A sentencing hearing was set for November 30, 2011.

{¶7} On November 30, 2011, Ybarra's sentencing hearing was held. At the sentencing hearing, the State recommended a sentence of community control and then Ybarra, his attorney and Ms. Cole all made statements regarding the

underlying incident that led to the charges in this case. Ybarra and Ms. Cole maintained that Jane Doe's injuries resulted from a fall on a playground.

{¶8} Despite the State and Ybarra's recommendation of a sentence of community control, the court imposed a four-year prison sentence on Ybarra. Just after the court announced Ybarra's four-year sentence, a sidebar was conducted at the bench. Following the sidebar, the court stated that under the newly revised sentencing statute that went into effect in September of 2011, the maximum sentence for Ybarra's crime was three years. The court then vacated the four year sentence and imposed a prison term of three years rather than four years.

{¶9} On December 6, 2011, the court filed its "Judgment Entry of Sentence." It is from this judgment that Ybarra appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR I**
**THE TRIAL COURT'S SENTENCE IS NOT SUPPORTED BY THE RECORD AND IS CONTRARY TO LAW.**

**ASSIGNMENT OF ERROR II**
**THE TRIAL COURT FAILED TO ADVISE THE DEFENDANT OF HIS TERMS OF COMMUNITY CONTROL.**

*First Assignment of Error*

{¶10} In Ybarra's first assignment of error, he argues that his sentence was not supported by the record. Specifically, Ybarra argues that the trial court did not make required statutory findings to support giving Ybarra a maximum sentence,

that the trial court considered the victim's statements in passing sentence, which, he claims, were not contained in the record, and that the trial court considered the dismissed charge of Failure to Register as a Sex Offender in determining Ybarra's sentence.

{¶11} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8, citing *State v. Carter*, 11th Dist. No. 2003-P0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Daughenbaugh* at ¶ 8, citing *Carter*, 2004-Ohio-1181, at ¶ 44; R.C. 2953.08(G). Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104 (1986).

{¶12} In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 97, the Supreme Court of Ohio stated that "[t]rial courts [now] have full discretion to

impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at paragraph seven of the syllabus. In fact, the Court in Foster specifically found that

> **[t]he following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms[.]**

*Id.* at ¶ 97.

{¶13} Although the trial court is given full discretion in sentencing pursuant to *Foster*, the trial court must still consider the overriding purposes of felony sentencing, which are to protect the public from future crimes by the offender and to punish the offender. R.C. 2929.11(A); *State v. Scott*, 3d Dist. No. 6-07-17, 2008-Ohio-86, ¶ 49, citing *State v. Foust*, 3d Dist. No. 3-07-11, 2007-Ohio-5767, ¶ 27. Additionally, "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶14} Ybarra first argues that his sentence was improper because the trial court gave him a maximum sentence without making "required" statutory findings. Ybarra cites the severed portions of R.C. 2929.14(C), and R.C. 2929.19(B)(2)(d) in support of his argument. Pursuant to the Ohio Supreme Court's holding in *Foster*, the court was not required to make findings to support his maximum sentence. Ybarra's three-year sentence for his third degree felony offense of Child Endangering was within the statutorily permissible range under the new sentencing guidelines. *See* R.C. 2919.22(A); R.C. 2929.14(A)(3)(b).

{¶15} Moreover, not only was Ybarra's sentence within the statutory permissible range under the new sentencing guidelines, but the court also did state at the sentencing hearing that it had reviewed the "principals (sic) and purposes of incarceration under R.C. 2929.13."[1] (Tr. at 15). Furthermore, at the sentencing hearing the court reviewed on the record its reasoning for sentencing Ybarra to three years in prison citing Ybarra's criminal history[2] and citing that Ybarra's version of the events from the underlying crime was not credible.[3] (Tr. at 12-15).

---

[1] The specific reference to Endangering Children in R.C. 2929.13 can be found at R.C. 2929.13(F)(16).
[2] The court's review of Ybarra's criminal history showed that Ybarra had a Driving Under Suspension charge in 1998, a Theft charge in 1999, a Probation Violation in 1999, a Receiving Stolen Property charge in in 1999, a second Probation Violation charge in 1999 wherein Ybarra made inappropriate sexual comments at an individual's school, a Corruption of a Minor charge in 2000 resulting from sexual acts that occurred with a 13 year old, a Disorderly Conduct and a Failure to Appear as a result of "jump[ing]" bond and taking the girl to Texas, a Disorderly Conduct and an Assault charge in 2001, a Driving Under Suspension charge in 2005, and an OVI reduced to reckless operation in 2010. (Tr. at 12-13).
[3] Ybarra claimed that the victim's injuries occurred from her falling off a piece of playground equipment. Ybarra felt that he was "guilty of not giving her medical treatment as soon as the incident happened." (Tr. at 6). The court found this not to be credible finding that the child's injuries were not consistent with Ybarra's version of events. (Tr. at 14-15).

{¶16} In addition to the reasoning articulated at the sentencing hearing, in the "Judgment Entry of Sentence" the trial court stated that it "ha[d] considered the record, oral statements, any victim impact statements, and the pre-sentence investigation report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11 & 2929.12." (Doc. 44). As the trial court reviewed its reasoning at the sentencing hearing and recounted what it had considered in the judgment entry, we find no error in sentencing Ybarra based upon the record.

{¶17} Ybarra next argues that his sentence was improper because the trial court improperly relied on the child victim's out of court statements to determine Ybarra's sentence. After examining the record, we find that the trial court's references to any statements of the victim are contained in the following statement taken from the sentencing hearing:

> **THE COURT: Well, Mr. Ybarra, my conclusion is that you are misrepresenting what happened here. My conclusion is that you're the one that's responsible for this. My conclusion is that the injuries do not match what are (sic) your version of what happened. I do not believe you have any credibility. I do not believe any of the statements that you have made, either in the statements to law enforcement, to the officer who did the investigation, or to the court today. When the child was brought in, she had a broken wrist, a fractured right thigh, and a fractured skull. There were injuries to face, left foot, throat, left buttock, cheek, chin and right knee. The victim stated that you tried to choke her and kick her, but you had some other version of events. Your continued statements about the origin of this trauma simply don't match the injuries here.**

(Tr. at 15).

{¶18} Here, the trial court made reference to the child's injuries, which were contained in the record in the police report attached to the criminal complaint, in the affidavit attached to a search warrant issued to search some of Ybarra's property, and in the pre-sentencing investigation report.[4] The reference that "the victim stated that [Ybarra] tried to choke her" is also contained in the police report and the victim's statement that Ybarra had tried to choke and kick her was contained in the pre-sentencing investigation report.[5] All of these statements of the victim that were mentioned by the trial court at the hearing were thus contained in the record and could properly be considered by the trial court in passing sentence.

{¶19} Furthermore, given the fact that none of these allegedly improper statements of the trial court were mentioned in the "Judgment Entry of Sentence" it is not even clear how much weight, if any, was given to these particular facts. The degree of Ybarra's felony and Ybarra's criminal history alone could have justified Ybarra's sentence. Therefore we find that the statements were not improper, and even discounting these statements, Ybarra's sentence was still justified in the record.

---

[4] These documents are not numbered but they are all contained within the record provided to this court for review.

[5] There is also at least one reference in Ybarra's "Motion in Limine of J.L.'s Statements to Medical Personnel" to the victim's claims of Ybarra kicking her. (Doc. 30).

{¶20} Ybarra next argues that the trial court improperly considered Ybarra's dismissed charge of Failure to Register as a Sex Offender when determining Ybarra's sentence. At the outset of analyzing this argument, we note that the dismissed charge was not mentioned *at all* in the court's "Judgment Entry of Sentence." (Doc. 44). When reviewing the transcript from the sentencing hearing, we find the following passages are the only references the court made to Ybarra's dismissed charge of Failure to Register as a Sex Offender.

> **THE COURT: Did you know that [Ybarra] was not to be residing at this residence, that he wasn't registered at that residence?**
>
> **MS. COLE: As far as registration, I don't know how that goes because I don't know anything about all that.**
>
> **\* \* \***
>
> **[THE COURT:] Then the within charges that were originally charged as an endangering children, a felony of the second degree, was reduced to a felony of the third degree, as well as a failure to register charge for the fact that you were not residing at the residence that you were supposed to be residing and registered at; is that correct?**
>
> **[Ybarra:] Yes, Your honor.**
>
> **[THE COURT:] Your version of events, Mr. Ybarra, include that there were supposedly two incidents, one on a Friday and one on a Sunday; is that correct, with this child?**

(Tr. at 9-10, 13).

{¶21} The preceding testimony represents the totality of the court's reference to Ybarra's dismissed charge of Failure to Register as a Sex Offender at

the sentence hearing. There is nothing in these statements to suggest the trial court was doing anything more than testing the credibility of Ms. Cole who was speaking on behalf of Ybarra at his sentencing hearing, or that the court was doing anything more than clarifying the charges against Ybarra. Based upon the plain language, we do not find that the trial court improperly relied on the dismissed case in passing sentence.

{¶22} For the foregoing reasons, Ybarra's first assignment of error is overruled.

*Second Assignment of Error*

{¶23} In Ybarra's second assignment of error, he argues that the trial court failed to advise him of the terms of his community control. Specifically, Ybarra argues that:

> **when a trial court sentences a defendant to community control sanctions, the court must advise the defendant that if the conditions are violated, the court may impose a longer term under the same sanction, a more restrictive sanction, or a prison term. Furthermore, the court is required to advise the defendant of the specific prison term that will be imposed for violation of community control sanctions.**

(Appt. Br. at 4).

{¶24} Despite Ybarra's arguments, Ybarra was *not* sentenced to community control and community control was not part of his sentence. (Doc. 44).

Therefore, there was no error in the trial court's "failure" to advise Ybarra of anything related to community control sanctions.

{¶25} If Ybarra had intended to argue that the trial court did not properly advise him of his post-release control, that argument would also fail. Ybarra was notified in his written plea-agreement, at the sentencing hearing, and in the "Judgment Entry on Sentencing" that following his prison term he "may be subject to a discretionary period of post-release control for three (3) years under the terms and conditions as determined by the Adult Parole Authority." (Doc. 40); (Tr. at 15-16); (Doc. 44). As post-release control is discretionary in his case up to three years, the court's instruction was proper. *See* R.C. 2967.28. Accordingly, Ybarra's second assignment of error is overruled.

{¶26} For the foregoing reasons Ybarra's assignments of error are overruled and the judgment of the Putnam County Court of Common pleas is affirmed.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**